TRULINCS 78477112 - HENRY, DREW JOSEPH - Unit: YAN-D-A

----------------------------------------------------------------------------------

~~FROM: 78477112~~
~~TO:~~
~~SUBJECT:~~
~~DATE: 01/20/2026 09:34:12 PM~~

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA

DREW JOSEPH HENRY,
Petitioner,

v.

WARDEN, FPC YANKTON,
Respondent.

4:25-CV-04244-CCT

PETITIONER'S REPLY TO RESPONDENT'S RESPONSE
WRIT OF HABEAS CORPUS PURSUANT TO 28 USC 2241

I. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Failure to exhaust administrative remedies in FSA time credit calculation cases has been considered and excused by other courts. "[N]one of the reasons requiring exhaustion are present in this case. First, any agency expertise necessary to generate a proper record and reach a proper decision has been provided in Respondent's filings. Second, the claim relies on a mistaken interpretation of law. Finally, administrative review in this case is not likely to allow the agency to correct its own mistakes and preclude the need for judicial review because the Court disagrees with Respondent's reading of the FSA." _Joseph v. Warden, FCI-Mendota_, U.S. Dist. LEXIS 224688, 6-7 (E.D.Ca., Nov. 13, 2025). Development of a factual record is not necessary in a petition involving a strictly legal question. Moreover, given Respondent's assertion that participation in EBRRs during holdover is impossible it can be inferred that insistence on exhaustion in order to establish a factual record of program participation is intended as an administrative hurdle rather than a relevant factor in this petition.

As for exhaustion while at Atwater SCP, failure of the Court to address the issue of holdover credits does not change the fact that the issue was mentioned in Petitioner's requests for administrative remedy and, consequently, that the administrative remedy process was exhausted by Petitioner with respect to this issue. Respondent has not given any explanation why requiring Petitioner to go through the entire process again would not be futile.

II. COGNIZABILITY UNDER HABEAS

Respondent asserts that a claim is not cognizable under habeas if the requestED relief would "not 'necessarily' result in a speedier release" (Doc. 7, p. 8, line 1). The word "necessarily" is in quotation marks with no indication of its source. Presumably Respondent is referring to the earlier cited case, _Spencer v. Haynes_, 774 F.3d 467 (8th Cir. 2014), which does not use the word "necessarily" but merely states a requirement that the remedy "would result in an earlier release from prison" at 469. This case was decided four years prior to FSA becoming law and should not be misconstrued as being directly relevant to FTC earning (the subject of _Spencer_ was a conditions of confinement injury claim). Moreover, insertion of the

TRULINCS 78477112 - HENRY, DREW JOSEPH - Unit: YAN-D-A
------------------------------------------------------------

word "necessarily" into this statement completely changes the meaning such that a claim which would in a particular situation result in an earlier release from prison would not be cognizable if in some other comparable situation the petition would (or might) not result in an earlier release from prison.

There is a Circuit split with respect to the interpretation of "held in custody in violation of the . . . laws . . . of the United States" in 28 U.S.C. 2241(c)(3). As noted, _Spencer_ predates the First Step Act. Prior to FSA, transfer to pre-release custody would fall under conditions of confinement (or execution of a sentence) and BOP discretion under 18 U.S.C. 3621 to determine an inmate's place of confinement. FSA, however, in its use of the word "shall", restricts BOP placement authority when an inmate's accumulated time credits equals the remainder of his sentence. Consequently, an inmate held in a federal prison past his FSA transition to community date would, in fact, be held in custody in violation of the laws of the United States (namely, the First Step Act) in the same way that an inmate held in a penitentiary for an offense punishable by one year or less would be held in custody in violation of 18 U.S.C. 4083 notwithstanding the authority of the BOP to designate inmates to penitentiaries in other situations.

Furthermore, Petitioner's earned credits to date total less than 365 days. Consequently, the requested holdover credits would, in fact, change his transfer to supervised release date. Respondent claims that the BOP has the discretion to apply even the first 365 days of credits to pre-release custody rather than supervised release, but the current practice of the BOP, as outlined in its program statement 5410.01 (see Document 8-6, p. 21), is to automatically apply the first 365 days of credits to supervised release for eligible inmates. Per the _Accardi_ principle (_United States ex rel. Accardi v. Shaughnessy_, 347 U.S. 260 (1954)), the BOP is obligated to follow its own policy statements.

Finally, Petitioner has requested class status for this action. The named class encompasses members with less than 365 days of projected credits for whom relief would result in shorter terms of imprisonment in accordance with Respondent's proposed jurisdictional requirement, hence this Court has jurisdiction to rule on the class action.

III. ALTERNATIVE ACTION

The conclusion of _Spencer_ was that a district court should consider converting (with the consent of the Plaintiff) an improperly filed pro se habeas petition into the correct vehicle for relief. 18 U.S.C. 2241 is the statute used in most districts for correcting FTC calculations (see, for instance, _Patel v. Baron_, 2023 U.S. Dist. LEXIS 174601 (W.D.Wash. 2023); and _Joseph v. Warden, FCI-Mendota_). However, should this Court agree with Respondent that this petition is not cognizable under habeas then _Spencer_ would advise conversion of the petition to an action under 18 U.S.C. 3626, 5 U.S.C. 702, and/or 18 U.S.C. 1361.

A. Conditions of Confinement

18 U.S.C. 3625 precludes application of 5 U.S.C. 701-706 to "the making of any determination, decision, or order

TRULINCS 78477112 - HENRY, DREW JOSEPH - Unit: YAN-D-A

-----

under this subchapter [18 U.S.C.S. 3621 et seq.]". However, "[b]ecause Petitioner is challenging a BOP regulation rather than an administrative decision made by the BOP pursuant to that regulation, the APA does not preclude judicial review." _Marquez v. Washington_, 2025 U.S. Dist. LEXIS 180055, 3 (M.D.Al., Sep. 15, 2025).

B. Mandamus

Mandamus is appropriate where: 1) the petitioner has a clear and indisputable right to relief; 2) the respondent has a nondiscretionary duty to honor that right; and 3) there is no other adequate remedy available. _Mitchel v. Colvin, 809 F.3d 1050, 1054 (8th Cir. 2016). Per the First Step Act, eligible inmates have a clear and indisputable right to accrue FSA time credits for successful participation in EBRRs or PAs and the BOP has a clear, nondiscretionary duty to properly calculate a prisoner's ETCs and to apply them when that prisoner meets the criteria for application (time remaining equaling accumulated ETCs, etc.). A prisoner whose ETCs have been miscalculated by the BOP has a clear right to relief. Finally, if this Court finds that neither a habeas petition nor a conditions of confinement claim are cognizable then mandamus is the only adequate remedy remaining.

IV. FTCS AS UNTENABLE BASIS FOR HABEAS CLAIM

Respondent misconstrues _Fiorito_. Fiorito apparently conceded that FSA programming is untenable while in the SHU and argues that he should not have been placed in the SHU. _Fiorito_ would be more similar to the instant petition had Fiorito argued instead that he had participated in FSA programming while in the SHU in accordance with statute but was not credited with ETCs which he had, in fact, earned. Even this situation, though, would have the important distinction that Fiorito was in disciplinary segregation whereas Petitioner during the time under consideration was in general population. Even Fiorito, though, could, perhaps, have argued that FSA does not even exempt the SHU from the requirement that the BOP provide prisoners with programming opportunities, but certainly a BOP facility which houses sentenced inmates is statutorily bound to provide at least those inmates not in disciplinary segregation with FSA programming opportunities and to properly credit them for participation.

V. PROPER CALCULATION OF CREDITS

A. Statutory Requirements of FSA

Respondent stresses the "successful participation" language of FSA while neglecting the requirement that the BOP make FSA programming available "throughout [a prisoner's] entire term of incarceration." Respondent's arguments strongly resemble similar arguments made by the BOP to justify delayed transfers to pre-release custody due to lack of bed space (i.e. the BOP's failure to ensure adequate availability of bed space) which have similarly been rejected by courts due to statutory language failing to include such an exception; see _Woodley v. Warden, USP Leavenworth_, 2024 U.S. Dist LEXIS

3

TRULINCS 78477112 - HENRY, DREW JOSEPH - Unit: YAN-D-A

---

87521, 7-8 (D.Kan., May 15, 2024): "No such condition concerning bed availability is included among the requirements for eligibility under Section 3624(g) . . . Numerous courts have held that the BOP has no discretion to delay or refuse transfer of an eligible prisoner to prerelease custody, which transfer is mandatory." Similarly, the BOP has no discretion to neglect to provide FSA programming to inmates in its custody. See _Wong v. Warden, Yankton Fed. Prison Camp_, 2024 U.S. Dist. LEXIS 159752, 3-4 (D.S.D., Sep. 3, 2024).

Furthermore, "Respondent misstates one of the requirements - completion of EBRR programming. The rulemaking proceedings are clear that First Step Act Time Credits are not dependent upon completion of the programs." _Wong_ at 8. Current BOP practice is to place eligible inmates in earning status until such a time that they do something, e.g. refusing recommended programming, to be taken out of earning status. Given that a failure to participate in programming (per Respondent's proposed definition of participation) due to unavailability would be the fault of the BOP, not Petitioner, fair relief would be to require the BOP to place Petitioner in earning status beginning February 12, 2024, absent any contention that he refused to participate in programming during this period. This is, in fact, exactly what would happen at a designated facility that for whatever reason was not able or willing to provide programming opportunities to prisoners: provided they were not in refusal status, they would continue to earn credits; see 28 C.F.R. 523.41(c)(3).

Respondent's argument that it makes little sense to conduct an intake assessment immediately after sentencing is both irrelevant and rebuttable. Firstly, the BOP has no authority to ignore statutes which it deems insensible (see previous references to "shall", "entire term of incarceration", and _Woodley_). Secondly, MDC-LA, FCC Victorville, and FTC OKC are all BOP facilities. Only prior to sentencing was Petitioner detained at the behest of the USMC, and only during transfers to/from court and from Oklahoma City to Sioux Falls was he not physically in BOP custody (see _Wong_ at 6-7). MDC-LA and FCC Victorville are both fully equipped with counselors, case managers, secretaries, and wardens capable of performing risk and needs assessments, and any other tasks that the BOP might deem necessary for compliance with FSA. 18 U.S.C. 3632(a)(1) states that the BOP is to assess prisoners during intake, not after sentencing (see Petitioner's Memorandum in Support of Third Ground).

TRULINCS 78477112 - HENRY, DREW JOSEPH - Unit: YAN-D-A

---------------------------------------------------------------------------------------------



Respondent at Doc. 7, p. 13, line 1 incorrectly implies that the FSA specifies times when an inmate is not eligible to participate in programming. The only exclusion is 18 U.S.C. 3632(d)(4)(B) which states that a prisoner may not earn time credits for EBRRs completed during official detention prior to commencement of his sentence. Even this paragraph, though, can be read as excluding not earning generally but only earning from EBRR programs (see Petitioner's Memorandum in Support of Third Ground). This interpretation would not be unreasonable given that: 1) pretrial time is credited toward an inmate's sentence, 2) pretrial inmates already earn good conduct time, 3) an inmate's "entire term of incarceration" includes pretrial time, and 4) this interpretation better accords with the stated purpose of the FSA given that it is not atypical for inmates to serve a significant portion, often the majority, of their sentences prior to actually being sentenced. Consequently, Petitioner's earning start date should actually be August 7, 2019. However, even if the Court rejects this reasoning, that would still leave pretrial detention as the only time period during which an inmate would be ineligible to earn FTCs.

Also noteworthy is that Congress chose to explicitly exclude EBRRs completed prior to sentencing from FTC earning in 3632(d)(4)(B), rather than creating an exclusion encompassing all EBRRs and PAs completed prior to completion of the R&N assessment or prior to arrival at a designated facility. However sensible Respondent's petition may be, the BOP is not Congress and has no authority to extend statutory exclusions further than specified in the statute. Subsections (a) and (b) of Section 3632 describe the development of the R&N system but it is subsection (d), paragraph (4), which is relevant to the earning of time credits with "Availability" described in subparagraph (B).

Respondent at Doc. 7, p. 15, line 16 refers to Petitioner's authority as "scant", which neglects the wealth of cases cited in _Anderson v. FPC Yankton_, 2024 U.S. Dist. LEXIS 216605, 5 (D.S.D., Nov. 26, 2024) which Petitioner, filing pro se and incarcerated with no access to word processing software, opted not to cite explicitly. In summary, _Anderson_ cites ten cases from various districts which found that "BOP regulation [Section] 523.42(a) contradicts clear congressional intent for when an inmate becomes eligible to earn ETCs". As already noted, the BOP has the responsibility to ensure that eligibility to earn FTCs translates into actual earning and has no statutory authority to arbitrarily prevent earning by failing to make programming available. Respondent's argument is undermined by the fact that Petitioner was excluded form earning time credits not only between February 12, 204, and May 20, 2024, but also during the month of transit between Atwater SCP and Yankton FPC which took place over a year after Petitioner's initial R&N assessment at Atwater (contrary to Respondent's contention that the core issue is the inability to program without having undergone such an assessment).

TRULINCS 78477112 - HENRY, DREW JOSEPH - Unit: YAN-D-A
--------------------------------------------------------------------------------

Regarding Respondent's "parity" argument, assuming it were relevant it would actually weigh in favor of Petitioner. Conceding that the BOP cannot feasibly offer programming opportunities to inmates in non-BOP facilities (though it is not out of the realm of possibility that if the BOP can contract to have inmates housed and fed that it could also contract to have them programmed) this specific class of inmates would, unfortunately, be at a loss (though not any less of a loss than they are at now). However, in order to ostensibly preserve parity between inmates in BOP versus non-BOP facilities prior to transfer a much more significant disparity is created between inmates who spend significant time in "holdover" and: inmates who, for whatever reason, transfer quickly; inmates who are not detained at all prior to self-surrendering; and inmates who are granted furlough transfers. The biggest disparity, of course, follows from the pretrial delay which is routine in federal criminal cases (such as Petitioner's), but the court is compelled to interpret the law in the manner most in accordance with what it says, not what it ought to say, and the generally accepted interpretation of 18 USC 3632(d)(4)(B)(ii) (although Petitioner has proposed an alternate interpretation in his amended petition which has not yet been considered by any courts) is that addressing this disparity is precluded by statute.

Respondent's remaining arguments are essentially reiterations of or supplements to earlier arguments.

B. Actual Participation

Respondent asserts that evidence of actual participation in FSA programs by Petitioner is relevant to this petition. Petitioner has asserted that such evidence is not necessary to answer the strictly legal questions pertaining to the BOP's interpretation of statute. Petitioner would request leave to respond in a separate filing if the Court deems this evidence relevant. However, current BOP policy and practice gives weight to the burden being placed on Respondent to show evidence of refusal to participate, rather than on Petitioner to show evidence of actual participation.

C. Second Risk Assessment

Respondent is correct that the purpose of the consecutive assessment requirement is to assess an inmate's progress over a period of time. Petitioner concedes that security classification is not a recidivism risk assessment with respect to 18 U.S.C. 3632(d)(4)(A)(ii). However, given that Petitioner met routinely with his case manager while at MDC-LA, the primary question of this petition is pertinent here: can Petitioner be denied FSA credits due to the BOP failing in the duties mandated by FSA, specifically, can he be denied these additional 5 credits per month due to the BOP failing to assess his risk of recidivism as part of his team meetings while at MDC-LA? (This could perhaps be construed as a new argument, but the court has discretion to consider it under _Barham v. Reliance Std. Life Ins. Co._, 411 F.3d 581, 584 (8th Cir. 2005).)

VI. CONCLUSION

Respondent's position is not unreasonable, but it is a position which has already been presented to and rejected by numerous courts. In effect, Respondent seeks to substitute what the law actual is with what the BOP believes the law ought

TRULINCS 78477112 - HENRY, DREW JOSEPH - Unit: YAN-D-A

----

to be. If the text of the law is clear then no amount of sensibility can justify a policy which is contrary to the law (this was true even under _Chevron_). In summary, the BOP has a duty to credit eligible inmates who have successfully participated in EBBRs or PAs and a complementary duty to make these programs available to inmates through their entire term of incarceration. The BOP does not have discretion to arbitrarily withhold programming opportunities and then fail to award time credits to inmates for failing to participate in programs which it failed to provide. Perhaps the BOP could be excused for not providing such opportunities when to do so would be logistically impossible. At the other extreme, the BOP could certainly _not_ be excused for failing to provide programming opportunities at facilities where inmates are designated and serving their sentences after having undergone their risk and needs assessments. The situation in question is between these two extremes: inmates are housed at BOP facilities where providing programming opportunities would not be logistically impossible but merely inconvenient (even though an inmate spending months in "holdover" is not abnormal).

    The question which this Court is being asked to consider is this: What are the BOP's obligations under the 18 U.S.C. 3621(h)(6) mandate to make programming available throughout a prisoner's entire term of incarceration? What is the proper recourse if the BOP fails to abide by this mandate?

    Petitioner asserts that this Court does have jurisdiction to rule on this case as a habeas petition but requests, if lack of jurisdiction is found, conversion of this petitioner to the proper civil action. Petitioner would also request, in the latter case, leave to proceed in forma pauperis if the action is deemed to fall under the fee requirements of PLRA (though mandamus actions related to habeas actions are not necessarily subject to PLRA).

Dated: January 21, 2026

*[signature]*

Drew Henry 78477-112
Yankton Federal Prison Camp
PO Box 700
Yankton, SD 57078